I regard a further statement of my views to be of no consequence.

---

No. 27,095.

The State of Kansas, *Appellee*, v. Wesley Chace, *Appellant.*

(261 Pac. 559.)

SYLLABUS BY THE COURT.

1. Husband and Wife—*Abandonment—Violation of Alternative Judgment— Separation by Wife as Defense.* Where a husband, after a· plea of guilty of nonsupport of his wife, is given by the court the alternative requirement of paying her a stipulated sum per week or living with her and supporting her satisfactorily, it becomes material on the hearing of complaint for his violation of the order whether it was his fault or hers that they again separated after having lived together for some weeks.

2. Same—*Abandonment—Living Together for Time as Satisfaction of Alternative Judgment.* Where, under such circumstances as above stated, the .husband and wife resume marital relations which continue satisfactorily for some weeks, he is not necessarily a violator of the alternative order and subject to sentence under the statute upon the showing alone that he has failed to pay the stipulated sum since a second separation.

Appeal from Sedgwick district court, division No. 3; Grover Pierpont, judge. Opinion filed December 10, 1927. Reversed.

*L. A. Hasty, Robert R. Hasty* and *George E. Hasty,* all of Wichita, for the appellant.

*William A. Smith,* attorney-general, *Roland Boynton,* assistant attorney-general, *William J. Wertz,* county attorney, *George L. Adams, Wilmer B. Harms* and *Paul K. Smith,* deputy county attorneys, for the appellee.

---

Husband and Wife, 30 C. J. pp. 1104 n. 68, 1105 n. 75, 1115 n. 24, 1116 n. 29.

The opinion of the court was delivered by

HUTCHISON, J.: The defendant in this case appeals from the judgment of the trial court imposing a sentence of confinement in the state reformatory for violation of a previous order of the court requiring him to support his wife after a plea of guilty under the wife-desertion act. The only question involved is whether the conduct of the wife in deserting her husband while he was supporting her under the order of the court is material in determining whether or not the defendant has violated the terms of the order. The court held that the conduct of the wife was immaterial, and that the only question was whether the defendant had paid the wife the ten dollars per week as ordered. During the taking of the testimony the court said to defendant's attorney, "You may cross-examine her [the complainant or wife] on the question of whether or not she has been paid, and that is the only question that the court is going to take up at this time."

On July 27, 1925, the defendant pleaded guilty to the criminal charge of failure to support his wife, and the following sentence was imposed upon him that day by the trial court:

"I am not going to impose any sentence in this case at this time, except to make an order for the support of your wife pending anything further that may be done in the case, and the order of the court will be that you pay ten dollars a week, beginning next Saturday, to the clerk of the district court of Sedgwick county, Kansas, for a period of two years for the support of your wife and during the time which she may be confined that you make provision for her medical and hospital bills at that time. And you will be required to give bond in the sum of five hundred dollars for the carrying out of this order of the court."

At the same time and in connection with the sentence the court gave him the alternative of living with and supporting his wife satisfactorily. The best expression of this alternative privilege is in the language of the trial judge as stated by him at the last hearing, as follows:

"Let the record show that the court at this time gives the defendant an opportunity of making his payments to the amount of fifty dollars to-day for the support of his wife under the orders of this court and the suspended sentence, and to continue under bond as arranged by this court upon bringing of the order of the court up to date. And, also, let the record show, in order that there may be no question about this matter, that at the time this case was brought up in court at the time the defendant pleaded guilty, that the court stated at that time, after the order had been made, that if they could live together satisfactorily and satisfactory arrangements could be made for

State v. Chace.

the support of the wife that that would supply the ten dollars a week ordered to be paid by the court; but if they were not able to live together satisfactorily, then the order of the court was to be carried out—the payment of ten dollars per week for her support until further orders of the court."

The evidence given on the second hearing on October 3, 1925, shows that they did live together for more than three weeks immediately after the first trial in an apartment furnished by him with the assistance of his father; that it was satisfactorily furnished, and that the provisions furnished were satisfactory. Then the wife suddenly left without any notice whatever, and three days later informed him by phone that she would not return. She now makes no substantial objection to the home or provisions furnished, but complains of the too frequent calls of her mother-in-law, and that her medicines were not furnished as promptly as they should have been. On the witness stand she said she would not live with defendant at the same home or elsewhere; that defendant had asked her to live with him and she had refused. The following three questions were asked her, to which she gave the following answers:

"Q. Would you be willing to live with Wesley at rooms separate from that house if he provided for you? A. No; I would not.

"Q. You wouldn't go back to him at all? A. No.

"Q. If he provided you with as comfortable a home as his circumstances will allow and with clothing, good food, medical attention and such other things as he is able to provide, would you go back and live with him now? A. No."

At the conclusion of the hearing on October 3, 1925, the court made the following statement:

"And I have always held, and still hold, that before prosecution of this kind, where a woman without just cause refuses to live with her husband, that she is not entitled to prosecute an action of this kind. However, this action was prosecuted; the complainant in this case stated that she was willing to live with her husband if they could get along satisfactorily together. After his plea she did go and live with him for a while. Just why they separated is not very clear to the court, but I don't think it is material in this case. The court will find from the information and proof offered in this case, that the order heretofore made by this court has been violated and that the defendant will now be called forward for sentence in this case."

Thereupon the following sentence was imposed upon the defendant:

"It is, therefore, by the court considered, ordered, adjudged and decreed, that the support bond of the defendant be and the same is hereby declared forfeited, and that the defendant be and he hereby is sentenced to serve two

(2) years at hard labor in the reformatory at Hutchinson, Kan., and to pay the costs of this action."

Had the court not given the defendant the alternative of supporting his wife, there might have been stronger grounds for holding that the only question involved was whether or not the defendant had paid the specified weekly allowance and concluding that he had violated the order if he had not done so. The statute authorizing this proceeding and imposing this penalty places it on the ground of the defendant's failure "without just cause." (R. S. 21-442.) When an honest attempt is made by the defendant to live with and support his wife in obedience to an order of court, and they again assume such marital relations, it is reasonable and right that he be punished as a violator of such order only when the failure was his fault or the result of his misconduct. Of course, the first trouble was admittedly his fault, as evidenced by his plea of guilty, but is he on that account to be held responsible for the acts of the wife which render a compliance with the order impossible? It is said he could have continued a compliance by taking the alternative; but the option or alternative was given the defendant, not the wife, when they had resumed living together.

"The chief object of the act is to compel the husband, when able, to support his family, and wherever he deserts his wife, leaving her in destitute or necessitous circumstances, it is his duty to provide for her there unless some reason be shown why she should follow him elsewhere." (*State v. Gillmore*, 88 Kan. 835, syl. ¶ 2, 129 Pac. 1123.)

The court not only encouraged this young couple to again live together by giving this alternative, but was clearly within the provisions of the statute when it did so. (R. S. 21-445.) Although the court excluded much of the evidence offered, on the ground that it was immaterial, yet considerable evidence found its way into the record as to the circumstance of the second separation—so much that the trial judge said at the close thereof, as above quoted, "Just why they separated is not clear to the court." Notwithstanding the defendant was out on bond and on his good behavior with an alternative requirement, yet because this is a criminal case the evidence should be clear that he has been guilty of violating both requirements, because he had a choice to comply with either. Of course, he violated one of them from the beginning—the $10 weekly payment—but the court says it is not clear as to their failure to live together.

"A wife's refusal, without just cause, to live with her husband, either through leaving him, refusing to follow him, or remaining away from him, relieves him of criminal liability for her nonsupport." (30 C. J. 1104.)

"There is authority that . . . the wife's return to the husband precludes further enforcement of an order for his payment to her of a periodical sum." (30 C. J. 1116.)

"If a husband is willing in good faith to maintain his wife if she will live with him, he cannot be convicted of a willful refusal or neglect to maintain her, even though he may have been guilty of ill-using her, for which reason she refused to return to live with him." (13 R. C. L. 1192. See, also, *People v. Pettit et al.*, 74 N. Y. 320.)

We think the evidence does not justify a conclusion that the defendant violated the order of the court given in the alternative.

The judgment is reversed and the defendant ordered released.